FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 MAR 26 PM 4: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIE L. WILLIAMS, JR., )
)
Plaintiff, )
) CIVIL ACTION NUMBER
v. )
) CV-01-BE-0096-S
CARI M. DOMINGUEZ,[1] CHAIR OF THE )
EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
)  **ENTERED**
Defendant. )
) MAR 2 6 2003

# MEMORANDUM OPINION

This matter is before the court on Appellant's Petition for Review of the Initial Decision of the ALJ Removing Appellant (Plaintiff's Motion for Summary Judgment) (Doc. 16), Defendant's Motion for Summary Judgment (Doc. 42), Plaintiff's Motion for Partial Summary Judgment (Doc. 44), Plaintiff's Supplemental Motion for Partial Summary Judgment (Doc. 46), and Plaintiff's Motion for Partial Summary Judgment (Doc. 49). The court held a hearing on these motions on December 18, 2002. At the hearing, the court expressed its intention to grant Defendant's Motion for Summary Judgment (Doc. 42) and to deny plaintiff's motions (Doc. 16, 44, 46 and 49). This Memorandum Opinion sets forth the court's reasoning for its ruling.

This action alleges retaliation, race, and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in

---

[1] This case was originally filed against Ida Castro, as chair of EEOC. On August 6, 2001, Cari Domingues assumed that position and was substituted as the party defendant by separte order on March 26, 2003.

Employment Act ("ADEA"), 29 U.S.C. § 633a, filed by Willie L. Williams, after he was terminated by his employer, the Equal Employment Opportunity Commission ("EEOC"), for the unauthorized private practice of law. In addition to his discrimination claims, as a federal employee, Williams also claims unlawful termination under the Civil Service Reform Act of 1978, 92 Stat. 1111 ("CSRA"), and seeks review of the United States Merit Systems Protection Board ("MSPB") decision sustaining his removal from federal service.

## Background

Williams was employed as a Supervisory Trial Attorney in the legal unit in EEOC's Birmingham District Office. In his position, Williams supervised attorneys in enforcement litigation conducted by EEOC in the States of Alabama and Mississippi.

At the time of Williams' termination, EEOC's Birmingham District Office had a District Director, a Deputy District Director, and two Enforcement Managers as the managers in the non-legal side of the office. The legal unit management consisted of a Regional Attorney, Jerome Rose, and two Supervisory Trial Attorneys (one of whom was Williams). All of the managers in the Birmingham District Office, except one of the Enforcement Managers, were African-American.

An EEOC regulation in effect during the relevant period prohibited its employees from engaging in the outside practice of law except under specifically authorized conditions "and with the advance approval of his or her immediate supervisor and the Deputy Legal Counsel." 29 C.F.R. § 1600.735-204(d)(1988). Williams applied for and received authorization to engage in outside practice for one year, from July 1985 to July 1986. He did not seek authorization thereafter. In November 1987, Williams received a memorandum from Rose ordering him not to seek authorization to engage in the outside practice of law for two years. Williams did not raise a timely

challenge to that order. On May 10, 1989, the District Director issued a memorandum reminding all employees in the office of the prohibition against the outside practice of law without approval.

On May 15, 1989, Williams was given a certification to sign which stated:

> THE UNDERSIGNED, BEING DULY SWORN DEPOSES AND STATES AS FOLLOWS:
>
> 1. That I am fully aware of the provisions of § 1600.735, et seq. of the Procedural Regulations of the EQUAL EMPLOYMENT OPPORTUNITY COMMISSION which provide in substance that advance approval must be obtained for permission for any Commission Employee to engage in:
>
>> a) any outside activities which might interfere with the full and proper performance of his or her duties and responsibilities, and
>>
>> b) the private practice of law in any form or fashion including those for which permission will usually be granted as provided for in § 1600.375-204(d).
>
> 2. That I, hereby, certify that I am not now engaged in any outside activities or the private practice of law which are violative of the above Sections of the Commission's Regulations, and that I will not engage in any such activities of the private practice of law in any form or fashion without first obtaining advance approval as required.

Williams signed the certification on May 17, 1989. In addition, Rose and the District Director testified that they orally warned Williams numerous times not to engage in the outside practice of law. Williams did not dispute their testimony.

On May 16, 1989, Williams appeared in court on behalf of Jessie Williams in his private lawsuit and the case was continued to June 1989. Plaintiff Williams admitted (in paragraph 85 of his Supplemental Motion for Partial Summary Judgment filed January 14, 2002) that he filed a private lawsuit in state court on behalf of Addie Bell Pearson on June 6, 1989. He also admitted that he filed pleadings in the Circuit Court for the Tenth Judicial Circuit of Alabama as counsel for the

defendant on October 23 and 31, 1989 in the private lawsuit captioned Mose L. and Jacqueline Johnson v. Meredith Walker. Williams remained as Walker's counsel until June 1990, just prior to his termination. The MSPB record contains copies of pleadings signed by Williams in the Pearson and Walker cases. Williams' representation of Ms. Pearson was noted in the EEOC Office of Inspector General Report issued on January 12, 1990.

Rose became aware of Williams' representation of Meredith Walker after Judge Cherner of the Jefferson County Circuit Court called the EEOC office on May 29, 1990, looking for Williams because Williams had failed to appear in Judge Cherner's court that day. Rose did not actually learn of the representation until he talked to Judge Cherner on June 11, 1990. Two days later, on June 13, a delegation of authority was issued to Rose for the purpose of proposing Williams' removal.

EEOC terminated Plaintiff in July 1990 because of his (1) continuing violation of EEOC's regulation prohibiting the outside private practice of law, (2) false and misleading certification of compliance to his supervisors, (3) failure to follow direct orders to cease his private practice, and (4) engagement in activities that adversely affected EEOC's Birmingham District Office.

On September 3 and 17, 1997, a hearing was held before an MSPB Administrative Judge resulting in a transcript of sworn testimony of 800 pages and substantial documentation. On September 3, 1999, the Administrative Judge issued a decision upholding the EEOC's decision to remove Williams. Williams alleged before the MSPB and in his motions for summary judgment in this court that he was removed because of his race and age and in retaliation for (1) attempting to discipline a white subordinate attorney, and (2) threatening to oppose race discrimination by his supervisor, Jerome Rose, the Regional Attorney.

Williams filed a Petition for Review of the MSPB decision, which the court is treating as a

motion for summary judgment, and three additional motions for partial summary judgment. EEOC filed a motion for summary judgment on all of Williams' claims.

### Standard of Review for Summary Judgment

Both parties seek summary judgment on their claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. When a district court reviews a motion for summary judgment under Rule 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings." 477 U.S. at 324. "The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." Anderson, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 249; Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002); Witter v. Delta Airlines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion <u>if</u> no genuine issues of material fact exist <u>and if</u> the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. <u>Anderson</u>, 477 U.S. at 254; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. See <u>Anderson</u>, 477 U.S. at 255; <u>Stewart v. Booker T. Washington Ins. Co.</u>, 232 F.3d 844, 848 (11th Cir. 2000); <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." <u>Graham</u>, 193 F.3d at 1282 (quoting <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

### Standard of Review in "Mixed Cases"

In mixed cases, cases where claims of discrimination and violations of the CSRA are taken to the MSPB, appeals are made to the district court pursuant to 5 U.S.C. § 7703(b)(2), rather than to the Federal Circuit Court of Appeals, which has exclusive jurisdiction of non-mixed MSPB decisions under 5 U.S.C. § 7703(b)(1). <u>Doyal v. Marsh</u>, 777 F.2d 1526, 1536 (11th Cir. 1985). The standard of review for MSPB decisions on the non-discrimination claims under the CSRA is on the record. Those decisions are set aside only if the MSPB findings or conclusions are found to be "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained

without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence," while the discrimination claims are accorded *de novo* review. Kelliher v. Veneman, 313 F.3d 1270 (11th Cir. 2002)(citing 5 U.S.C. § 7703(c)).

## Discussion

I.  De Novo Review of Discrimination Claims

   A.  Retaliation Claims

To establish a prima facie case of retaliation under Title VII or the ADEA, a plaintiff must show: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Williams v Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002). The protected conduct can be through (a) opposition to any practice made unlawful under the statutes, or (b) participation by making a charge, testifying, assisting or otherwise participating in any manner in an investigation, proceeding or hearing under the statutes. Equal Employment Opportunity Commission v. Total Systems Services, Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). For the protected activity to come under the participation clause, a statutory proceeding must be instituted. Id.; Johnson v. University of Cincinnati, 215 F.3d 561, 581 (6th Cir. 2000). Once the prima facie case is established, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its act. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). Then the plaintiff has the opportunity to show that the reason offered is a pretext for discrimination and that defendant had a retaliatory motive.

Williams contends that his termination was not due to his outside practice of law, but because of his opposition to race discrimination by Rose. He claims Rose retaliated against him because (1)

he (Williams) attempted to discipline a white subordinate trial attorney, and (2) Rose anticipated Williams would be making a claim of discrimination, which Williams actually issued to Rose in a June 16 memorandum. An attempt to discipline a subordinate of a different race is not conduct protected by Title VII. Williams v. County of Fairfax, 164 F.3d 628 (4th Cir. 1998)(unpublished).

For purposes of summary judgment, this court is willing to assume Rose knew Williams was about to deliver a complaint of racial discrimination to him, and that Williams established a *prima facie* case of retaliation in his termination under the opposition clause of the statute. However, EEOC has shown a legitimate, nondiscriminatory business reason for its termination of Williams. Williams repeatedly violated the EEOC's regulation concerning the outside private practice of law without first gaining prior approval. He did not conform his conduct to the certification that he signed and failed to follow direct orders of Rose and the District Director. After being confronted by documentation evidencing his representation of Walker, Williams claimed, and continues to claim, that he has a constitutional right to engage in an outside practice of law, without approval, while employed with the federal agency regardless of the regulation or what his superiors ordered him to do. Williams chose to disobey the regulation without filing an appropriate grievance or complaint to challenge its validity. No constitutional impediment lies to Agency regulations requiring prior approval for the outside practice of law by Agency employees. Williams v. IRS, 919 F.2d 745, 746 (D.C. Cir. 1990).

Williams insisted on providing his own interpretation to the regulation, although he certainly was aware of his superior's interpretation of that regulation at the time he violated it. Williams was not free to substitute his business judgment for that of the Agency. See Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)(*en banc*)("Provided that the proffered reason is one that might

motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.). This court is not to decide whether the regulation was a good one or a bad one, whether it is prudent or fair. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). Williams had a duty to obey the regulation, especially in his role as a supervisor, or challenge it directly before acting contrary to it.

Violation of an employer's rule provides a valid reason for termination, particularly when, as here, the employee had been warned and even certified that he was not in violation. The court specifically finds that violation of the prohibition against the outside practice of law by a full-time government employee provides a rational reason for a reasonable employer to terminate the employee. Williams did not produce any evidence to show that the reason for the termination was a pretext for retaliation.

  B.  <u>Race and Age Discrimination Claims</u>

Williams alleges his termination was motivated by race and age discrimination. To prove a *prima facie* case of race or age discrimination, he must prove the following: (1) he belongs to a protected class[2]; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees of other races more favorably; and (4) he was qualified for the position. Jones v. Bessemer Carraway, 137 F.3d 1306, 1310 (11th Cir. 1998)(citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) and McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824). The

---

[2]In race discrimination cases, that protected class is a racial minority. In age discrimination cases, the plaintiff must establish that he was a member of the protected group of persons between the ages of forty and seventy and the comparator was substantially younger. See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998). See also O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307, 1310 (1996).

record shows that Williams' position was not filled for over two years, when a younger, white female was promoted to the Supervisory Trial Attorney position. That person was recommended by Mildred Byrd, the African-American Supervisory Trial Attorney who remained after Williams' termination.

Williams attempted to show disparate treatment of two persons formerly employed in the Birmingham office. William Davenport was Williams' white subordinate trial attorney who sought and was granted permission to teach a law class at the University of Alabama at Birmingham. The record contains copies of his requests for permission to teach. Davenport was also the trial attorney Williams claimed he was prevented from disciplining. Davenport was not similarly situated because he was not engaged in the outside practice of law and because, unlike Williams, Davenport sought and received permission to teach. See Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).

The other comparator who plaintiff alleged was treated differently for purposes of age discrimination was Ernest Pugh, an African-American Enforcement Manager in Birmingham. Mr. Pugh applied for permission to wind down his practice when he returned to work at EEOC. For some reason, his application was not acted upon for an extended period of time. When it was finally approved, it was approved retroactively. Mr. Pugh was not similarly situated because he applied for authorization to practice and he was not employed as an attorney for EEOC. Thus, Williams failed to establish that any similarly situated employee was better treated and thereby failed to establish a *prima facie* case of discrimination.

Even assuming Williams has established a *prima facie* case of race or age discrimination, EEOC has articulated a legitimate, nondiscriminatory business reason for the termination as set out in some detail when addressing Williams' retaliation claims. Williams did not produce any evidence

to show that the reason for the termination was a pretext for race or age discrimination. Thus, summary judgment is also warranted on this alternative basis.

II.     Record Review of Civil Service Reform Act Claims

Plaintiff also seeks review of the decision of the Merit Systems Protection Board's finding that his removal was for the efficiency of the federal service. Judicial review of CSRA claims is under the standard set out at 5 U.S.C. § 7703(c). Under that standard, the court must affirm a final decision of the United States Merit Systems Protection Board unless the court finds that decision to have been (1) arbitrary or capricious, (2) without regard to law; or (3) unsupported by substantial evidence. Kelliher, 313 F.3d at 1276; Carr v. Reno, 23 F.3d 525, 528 (D.C.Cir. 1994).

A.     Arbitrary or Capricious Considerations

Plaintiff alleges that the MSPB Administrative Judge was biased against him. As support for his argument, Plaintiff shows that his MSPB appeal was dismissed twice for lack of jurisdiction by the Administrative Judge and remanded for hearing by the Board both times. However, in each instance, the United States Circuit Court of Appeals for the Federal Circuit, in decisions involving other cases, changed the law applied by the Administrative Judge while Plaintiff's Petition for Review was pending before the Board. The MSPB Administrative Judge, in dismissing Plaintiff's appeal in each case, followed the law existing at the time of the dismissal.

Plaintiff also alleges that the Administrative Judge conducted improper ex parte communications with the attorney for the Agency. Again, the criticism does not evidence bias. The ex parte communications occurred during a pre-hearing telephone conference after Plaintiff and his counsel unilaterally ended their participation in the conference. They simply hung up on the Administrative Judge and she continued to conduct the conference in their absence.

The MSPB Administrative Judge's Initial Decision was thorough, well-reasoned, based on sworn testimony and substantial documentation. Her reasoning was described in a lengthy written opinion containing legal conclusions and the rational factual bases for them.

B. Conformity to the Law

Plaintiff Williams challenges the initial decision of the MSPB Administrative Judge because she did not accept his reasoning that the November 1987 order not to apply for permission to engage in the outside private practice of law was illegal and, therefore, any discipline remotely based upon that order was unenforceable. Plaintiff's belated opposition to the 1987 order of the Regional Attorney was untimely and without merit. Plaintiff did not present any evidence that the MSPB decision was issued without regard to law.

C. Substantial Evidence

Although this court reviews the record to determine whether substantial relevant evidence supports the administrative agency's finding, it does not substitute its judgment for that of the agency where sufficient evidence exists to show that the decision was reasonable. This court defers to the reasonable findings of the MSPB, even if it might reach a different conclusion. Kelliher, 313 at 1277, citing Fort Valley State Coll. v. Bennett, 853 F.2d 862, 863 (11th Cir. 1988); City of Pompano Beach v. FAA, 774 F.2d 1529, 1539-40 (11th Cir. 1985)). The court accepts the credibility findings of the MSPB.

Here, ample relevant evidence before the MSPB supports its conclusions. The MSPB record contains 800 pages of sworn testimony and hundreds of pages of documents, most of which support the conclusions. Plaintiff admitted therein providing legal representation to at least one defendant in a private lawsuit after promising not to do so.

This court finds that substantial evidence supports the conclusion reached by the MSPB that Plaintiff engaged in the outside private practice of law without approval in violation of the regulation after being ordered not to, and, after promising not to, engaged again in the outside practice. The MSPB's decision is affirmed.

### Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment/petition for review, and supplemental and partial motions for summary judgment are denied. Defendant's Motion for Summary Judgment is granted in its entirety. An Order consistent with this Memorandum Opinion shall be entered contemporaneously herewith.

**DONE and ORDERED** this 26th day of March, 2003.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE